1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

11  ARTHUR C. CASTRO,                            )      1:06-CV-0805 LJO JMD HC
                                                 )
12              Petitioner,                      )
                                                 )      FINDINGS AND RECOMMENDATION
13       v.                                      )      REGARDING PETITION FOR WRIT OF
                                                 )      HABEAS CORPUS
14                                               )
    JAMES YATES, Warden,                         )
15                                               )
                Respondent.                      )
16  _____)

17
18          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus
19  pursuant to 28 U.S.C. § 2254.

20                                       **BACKGROUND**

21          Petitioner is currently in the custody of the California Department of Corrections pursuant to

22  a judgment of the Tulare County Superior Court.  A jury convicted Petitioner of committing lewd

23  acts upon a child under 14 years of age (Cal. Penal Code § 288(a)), with the allegation that Petitioner

24  had engaged in substantial sexual conduct with a child of 14 or 15 years while being at least 10 years

25  older (Cal. Penal Code § 1203.066(a)(8)), three counts of unlawful sexual intercourse with a person

26  under 16 (Cal. Penal Code § 261.5(b)), and two counts of committing a lewd act upon a child (Cal.

    Penal Code § 288(c)(1)).  (Answer at 4.)  The jury also found true the allegations that Petitioner had
27
    suffered six prior serious felony convictions (Cal. Penal Code §§ 667, 1170.12(a)) and that he had
28
    served five prior prison terms (Cal. Penal Code § 667.5).  (Id.)  On February 24, 2000, the court

1    sentenced Petitioner to an aggregate term of 75 years to life in prison.  (Id.)

2          Petitioner appealed to the California Court of Appeal.  On June 1, 2001, the court remanded

3    Petitioner's case for resentencing, reversing a finding of a prior serious felony and directing the trial

4    court to strike the enhancements for the prior prison terms.  (Answer at 4-5; Lodged Doc. 3.)

5          On February 20, 2002, the trial court resentenced Petitioner to a prison term of 71 years to

6    life.  (Answer at 5.)

7          On April 24, 2003, the court of appeal upheld Petitioner's conviction.  (Answer at 5; Lodged

8    Doc. 4.)

9          On May 28, 2003, Petitioner filed a petition for review in the California Supreme Court.  On

10   July 9, 2003, the court summarily denied review.  (Answer at 5; Lodged Doc. 5.)

11          Petitioner then filed a petition for writ of habeas corpus in the Tulare County Superior Court.

12   On November 10, 2004, the court denied the petition in a reasoned opinion.  (Answer at 5; Lodged

13   Doc. 7.)

14          On February 29, 2005, Petitioner filed a petition for writ of habeas corpus in the California

15   Supreme Court.  On May 24, 2006, the court summarily denied the petition.  (Answer at 5; Lodged

16   Doc. 6.)

17          On June 23, 2006, Petitioner filed the instant petition in this Court.  The petition raises the

18   following eight grounds for relief: 1) violation of due process and right to a fair trial when trial court

19   failed to address counsel's conflict of interest; 2) violation of due process when trial court

20   consolidated the charges against Petitioner without considering potential prejudice; 3) ineffective

21   assistance of trial counsel based on conflict of interest, failure to cross-examine witnesses, and

22   failure to oppose joinder; 4) ineffective assistance of trial counsel based on failure to properly

23   prepare for trial; 5) trial court violated Petitioner's rights when it conducted hearings outside his

24   presence and refused to permit Petitioner to call certain witnesses; 6) violation of due process when

25   prosecution failed to disclose exculpatory evidence; 7) ineffective assistance of appellate counsel;

26   and 8) violation of due process and right to allocution when trial court denied Petitioner's request to

27   speak prior to sentencing.

28          On December 20, 2006, Respondent filed a response to the petition.

1    On January 26, 2007, Petitioner filed a traverse to the answer.

2                                    **FACTUAL BACKGROUND**

3    Brandi Watts was born on September 3, 1983.  (Lodged Doc. 2, RT of Jan. 10-12, 2000 at

4    42.)  On November 16, 1998, Deputy Anderson contacted Brandi to ask her about a relationship she

5    had engaged in with Petitioner.  (Id. at 43-44.)  Brandi explained that her relationship with Petitioner

6    began in May of 1997 when she was living in Earlimart with her foster mother, Fransetta Owens.

7    (Id. at 44-45.)  Brandi Strickland, another foster child who lived with Owens, introduced Brandi

8    Watts to Petitioner, who lived about a block away from Owens.  (Id. at 45-47.)

9    Strickland took Brandi to Petitioner's house, informed Petitioner that Brandi was 13 years

10    old, and then left the house.  (Id. at 47, 82.)  Brandi and Petitioner talked for a while, then had sex.

11    (Id. at 49.)  Brandi went back home, but returned to Petitioner's home the next day.  (Id. at 51.)  She

12    and Petitioner had sex two more times in May 1997.  (Id. at 52.)  Brandi left the area in June 1997

13    and lived for a brief time in Porterville.  She then lived in Fresno for nine months.  (Id. at 52-53.)

14    In June 1998, Brandi called Fransetta Owens and asked for Petitioner's phone number.  (Id. at

15    53-54.)  Brandi called Petitioner and asked if she could live with him for a little while.  Petitioner

16    agreed and Brandi lived with him from the end of June 1998 until the end of September 1998.  (Id. at

17    54.)  She started having sexual intercourse with Petitioner within days of living with him.  She

18    explained that, while she lived with Petitioner, they had sex on a continuous basis two times a week.

19    (Id. at 55-56.)  Brandi specifically remembered having sex with Petitioner after they got a puppy and

20    a week after her September 3, 1998 birthday.   (Id. at 54-57.)  Petitioner directed Brandi to tell his

21    family that she was 18 years old if they asked her age.  (Id. at 61.)  Brandi later told one of

22    Petitioner's sisters that she was 18 years old.  (Id. at 77.)

23    After Brandi stopped living with Petitioner, Deputy Anderson contacted her and asked about

24    her relationship with Petitioner.  (Id. at 57-58.)  Brandi explained that she had suspected she was

25    pregnant and that, when she reported this to Mary, who was Brandi's foster parent at the time, Mary

26    contacted the authorities.  (Id. at 58-59.)  Brandi initially told Anderson that nothing had happened

27    with Petitioner.  (Id. at 80.)  She indicated that she wanted to go back and live with her mother.  (Id.

28    at 80-81.)  Brandi was eventually placed with her mother after she made a subsequent statement

1    admitting that she had engaged in sexual intercourse with Petitioner.  (Id. at 81.)

2         In November 1998, Brandi was contacted by Ralph Edwards, an investigator for the district

3    attorney's office.  (Id. at 62.)  She initially denied that anything had happened with Petitioner when

4    she spoke with Edwards because she did not want Petitioner to get in trouble.  (Id. at 62-63.)  About

5    a week later, Brandi called Edwards and told him the truth about her sexual relationship with

6    Petitioner.  Brandi explained that she did not think there was any point in lying about it.  (Id. at 63.)

7         The prosecutor showed Brandi two letters Petitioner had sent her while he was in custody,

8    dated December 23, 1998 and May 10, 1999.  (Id. at 85-90.)  The December 23, 1998 letter read in

9    part:

10        I guess you already know where I am and what for.  What did I do to deserved [sic]
          this?  Where is my reward for treating [you] like a lady, for giving you shelter, for
11        feeding you?  It doesn't hurt to be lock [sic] up.  It hurts cause you lie to me, spite the
          fact you hurt me so.  I still feel for you.  (Lodged Doc. 1, Supp. CT at 5.)
12
13   The May 10, 1999 letter read in part:

14        [W]hatever you do Brandi don't blame no one.  It was both of us fault.  What we did
          is something that has been happening all through the ages, that[']s what happens
15        when boy meets girl.  (Lodged Doc. 1, Supp. CT at 2.)

16        Investigator Edwards determined Petitioner's date of birth was April 14, 1951.  (Lodged Doc.
     2, RT of Jan. 10-12, 2000 at 107.)
17
18        In November 1998, Tulare County Sheriff's Detective Belinda Anderson contacted Brandi

19   who had been reported as a runaway.  (Id. at 131.)  Brandi informed Anderson that she thought she

20   might be pregnant because she and her boyfriend had been having sex for the past few months.

21   Brandi identified Petitioner as her boyfriend.  (Id. at 131-34.)  Anderson subsequently had another

22   deputy transport Petitioner from his house to the Porterville sheriff's substation.  (Id. at 132.)

23   Petitioner admitted to Anderson that he had engaged in sexual intercourse with Brandi approximately

24   three times.  Petitioner had ended the relationship when Brandi told him that she wanted a baby

25   "whether he wanted one or not."  (Id. at 132-33.)

26        In July 1998, Petitioner's sister, Virginia Barajas, met a girl who was living with Petitioner.

27   Petitioner told her the girl was living with him because she did not have any other place to go.  (Id. at
     127.)  To Barajas, the girl looked like she was 20 or 21 years old.  (Id. at 129.)
28

1    <u>Petitioner's defense</u>

2    Petitioner took the stand in his own defense.  He admitted suffering felony convictions for

3  crimes involving moral turpitude in 1990 and 1985.  (<u>Id.</u> at 146.)  In 1997, Petitioner saw Brandi at

4  various locations including the park and carnival.  (<u>Id.</u> at 148-49.)  He explained that she was dating

5  one of his nephews at the time.  (<u>Id.</u> at 148.)  He denied having sex with Brandi in 1997.  (<u>Id.</u> at 149.)

6    Petitioner admitted writing two letters to Brandi while he was in custody.  (<u>Id.</u> at 150.)  In

7  1998, Brandi called Petitioner and asked if she could stay with him.  (<u>Id.</u> at 152.)  He initially told

8  her no, but eventually relented after she kept asking, agreeing to let her stay in the garage for a few

9  weeks.  (<u>Id.</u> at 152-54.)  Brandi started living with Petitioner at the beginning of September 1998,

10  staying through October 18, 1998.  (<u>Id.</u> at 154.)  Petitioner did not have sexual contact with her

11  before her birthday on September 13, 1998.  Brandi told him that she was turning 18 on that date.

12  (<u>Id.</u> at 155-56.)  After that date, Petitioner engaged in a sexual relationship with Brandi and they

13  eventually started sleeping in the same room.  (<u>Id.</u> at 156, 158, 171.)  They shared the same bedroom

14  from September 20 to October 18, 1998.  (<u>Id.</u> at 158-59.)  Petitioner admitted that he was 46 years

15  old in June 1998.  (<u>Id.</u> at 166.)

16                                     **DISCUSSION**

17  **I.  Jurisdiction**

18    Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

19  to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

20  the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362,

21  375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S.

22  Constitution.  In addition, the conviction challenged arises out of the Tulare County Superior Court,

23  which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

24  Accordingly, the Court has jurisdiction over the action.

25    On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

26  1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

27  <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); <u>Jeffries v. Wood</u>, 114

28  F.3d 1484, 1499 (9th Cir. 1997), *quoting* <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th Cir. 1996),

1   *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* <u>Lindh v. Murphy</u>, 521 U.S. 320

2   (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition

3   was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

4   **II.  Legal Standard of Review**

5          This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

6   pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

7   Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

8          The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death

9   Penalty Act which became effective on April 24, 1996.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70 (2003).

10  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of

11  the claim "resulted in a decision that was contrary to, or involved an unreasonable application of,

12  clearly established Federal law, as determined by the Supreme Court of the United States" or

13  "resulted in a decision that was based on an unreasonable determination of the facts in light of the

14  evidence presented in the State Court proceeding."  28 U.S.C. § 2254(d); <u>see</u> <u>Lockyer</u>, 538 U.S. at

15  70-71; <u>see</u> <u>Williams</u>, 529 U.S. at 413.

16         As a threshold matter, this Court must "first decide what constitutes 'clearly established

17  Federal law, as determined by the Supreme Court of the United States.'"  <u>Lockyer</u>, 538 U.S. at 71,

18  *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court

19  must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

20  of the relevant state-court decision."  <u>Id.</u>, *quoting* <u>Williams</u>, 592 U.S. at 412.  "In other words,

21  'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set

22  forth by the Supreme Court at the time the state court renders its decision."  <u>Id.</u>

23         Finally, this Court must consider whether the state court's decision was "contrary to, or

24  involved an unreasonable application of, clearly established Federal law."  <u>Lockyer</u>, 538 U.S. at 72,

25  *quoting* 28 U.S.C. § 2254(d)(1).  "Under the 'contrary to' clause, a federal habeas court may grant

26  the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

27  question of law or if the state court decides a case differently than [the] Court has on a set of

28  materially indistinguishable facts."  <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 72.

1  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court

2  identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies

3  that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413.

4        "[A] federal court may not issue the writ simply because the court concludes in its

5  independent judgment that the relevant state court decision applied clearly established federal law

6  erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Id</u>. at 411.  A

7  federal habeas court making the "unreasonable application" inquiry should ask whether the state

8  court's application of clearly established federal law was "objectively unreasonable."  <u>Id</u>. at 409.

9        Petitioner has the burden of establishing that the decision of the state court is contrary to or

10  involved an unreasonable application of United States Supreme Court precedent.  <u>Baylor v. Estelle</u>,

11  94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

12  Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

13  decision is objectively unreasonable.  <u>See</u> <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600-01 (9th Cir.

14  1999).

15        AEDPA requires that we give considerable deference to state court decisions.  The state

16  court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's

17  interpretation of its own laws.  <u>Souch v. Schaivo</u>, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*,

18  537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

19  **III.  Review of Petitioner's Claims**

20        **A.  Ground One**

21        Petitioner argues that his rights to a fair trial and to a conflict-free representation were

22  violated by the trial court's failure to address his counsel's conflicts of interest.  Petitioner claims

23  that, despite the fact that Stacy Sorensen of the Public Defender's Office informed the court of

24  potential conflicts with four prosecution witnesses, the court did nothing to address the conflicts until

25  eight months later.  Petitioner argues that the conflicts adversely affected his representation.

26        This claim was presented in a petition for writ of habeas corpus to the Tulare County

27  Superior Court, which denied the petition in a reasoned opinion on November 10, 2004.  (Lodged

28  Doc. 7.)  The issue was then raised in a petition for writ of habeas corpus to the California Supreme

1  Court, which summarily denied the petition. (Lodged Doc. 6.) The California Supreme Court, by its

2  "silent order" denying the petition, is presumed to have denied the claims presented for the same

3  reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

4  In rejecting Petitioner's claim, the Superior Court stated that the trial court had no obligation

5  to interfere with the attorney-client relationship where Petitioner did not object to his representation

6  by the Public Defender's Office and rejected the trial court's offer to represent himself. Further, the

7  Superior Court found that there was no evidence that counsel had any conflict of interest or that any

8  such conflict adversely affected counsel's performance. (Lodged Doc. 7 at 1-2.)

9  "[T]o establish a violation of the Sixth Amendment, a defendant who raised no objection at

10  trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance."

11  Cuyler v. Sullivan, 446 U.S. 335, 348 (1980); accord Mannhalt v. Reed, 847 F.2d 576, 579-80 (9th

12  Cir. 1988); see also Mickens v. Taylor, 535 U.S. 162, 170-74 (2002) (extending Cuyler burden of

13  proof to situations in which trial judge failed to inquire into conflict about which he knew or

14  reasonably should have known). A mere "potential" or "theoretical" conflict is insufficient to

15  establish the presence of an actual conflict as required by Cuyler. Bonin v. Calderon, 59 F.3d 815,

16  827 (9th Cir. 1995). A petitioner must prove that an actual conflict existed "through a factual

17  showing on the record." Morris v. State of Cal., 966 F.2d 448, 455-56 (9th Cir. 1991).

18  The state court's determination was not unreasonable. Petitioner claims that his counsel

19  notified the trial court of "possibilities of conflict of interest with four (4) of the prosecution

20  witnesses," but he has made no factual showing that any of his representatives had an actual conflict

21  of interest during his representation. Further, Petitioner has not demonstrated how any such conflict

22  adversely affected his counsel's performance.

23  **B. Ground Two**

24  Petitioner argues that his due process rights were violated when the trial court consolidated

25  the two cases against him without jurisdiction to do so and without considering the potential

26  prejudice to him.

27  This claim was presented in a petition for writ of habeas corpus to the California Supreme

28

1   Court, which summarily denied the petition.  (Lodged Doc. 6.)  When the state court reaches a

2   decision on the merits but provides no reasoning to support its conclusion, we independently review

3   the record to determine whether the state court clearly erred in its application of Supreme Court law.

4   Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  However, although we independently review

5   the record, we still defer to the state court's ultimate decision.  Id.

6        "Federal habeas is available for improper consolidation only if the simultaneous trial actually

7   [rendered the] state trial fundamentally unfair and hence, violative of due process."  Park v.

8   California, 202 F.3d 1146, 1149 (9th Cir. 2000) (quotation marks omitted).  Each count must be

9   considered separately, asking whether "the trial on a particular count was fundamentally unfair in

10   light of that count's joinder with one or more other charges."  Id.  A petitioner has the burden to

11   prove unfairness rising to the level of a due process concern.  Id.

12        The state court did not clearly err in its application of Supreme Court law.  On November 19,

13   1998, the prosecutor filed a complaint against Petitioner alleging two counts of unlawful sexual

14   intercourse with a minor and two counts of committing lewd acts upon a child.  (See Lodged Doc. 1,

15   CT at 33-34.)  On December 8, 1998, the prosecutor amended the complaint to add special

16   allegations regarding Petitioner's prior serious felony convictions and his prior prison terms.  (See id.

17   at 1-6, 34.)  On January 15, 1999, based on new information, the prosecutor filed a new complaint

18   alleging an additional count of unlawful sexual intercourse and an additional count of committing a

19   lewd act upon a child.  (See id. at 34, 50-69.)

20

21        Petitioner has not shown that the consolidation of the charges resulted in a trial that was

22   fundamentally unfair, as the complaints involved the same type of conduct by Petitioner against the

23   same victim, with only the time period of the offenses differing.  (See id. at 1-6, 50-69.)  Further, to

24   the extent Petitioner claims that the trial court violated state law in consolidating the cases, his claim

25   is not cognizable in federal court on habeas.  Park v. California, 202 F.3d 1146, 1149-50 (9th Cir.

26   2000) ("[A] violation of state law standing alone is not cognizable in federal court on habeas.").

27   **C.  Ground Three**

28        Petitioner argues that trial counsel provided ineffective assistance in 1) representing him

1    while counsel had a conflict of interest; 2) failing to effectively cross-examine witnesses and

2    challenge Belinda Anderson's testimony at the February 19, 1999 preliminary hearing; and 3) failing

3    to oppose the joinder of the two cases filed against Petitioner.

4            These claims were presented in a petition for writ of habeas corpus to the Tulare County

5    Superior Court, which denied the petition in a reasoned opinion on November 10, 2004. (Lodged

6    Doc. 7.)  The issues were then raised in a petition for writ of habeas corpus to the California

7    Supreme Court, which summarily denied the petition.  (Lodged Doc. 6.)  The California Supreme

8    Court, by its "silent order" denying the petition, is presumed to have denied the claims presented for

9    the same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501 U.S. 797, 803

10   (1991).

11          In rejecting Petitioner's claim, the Superior Court found that Petitioner had not shown that

12   counsel had any conflict of interest or that any such conflict adversely affected the representation.

13   (Lodged Doc. 7 at 2.)

14          The law governing ineffective assistance of counsel claims is clearly established for the

15   purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe, 151

16   F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective

17   assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S. 668,

18   687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that

19   counsel's performance was deficient, requiring a showing that counsel made errors so serious that he

20   or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland, 466

21   U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard

22   of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of

23   reasonable professional judgment considering the circumstances.  Id. at 688; United States v.

24   Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is

25   highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the

26   wide range of reasonable professional assistance.  Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21

27   F.3d 1446, 1456 (9th Cir.1994).

28

1  Second, the petitioner must demonstrate that "there is a reasonable probability that, but for

2  counsel's unprofessional errors, the result ... would have been different." Strickland, 466 U.S. at 694.

3  Petitioner must show that counsel's errors were so egregious as to deprive the defendant of a fair

4  trial, one whose result is reliable. Id. at 688.  The court must evaluate whether the entire trial was

5  fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78

6  F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

7  A court need not determine whether counsel's performance was deficient before examining

8  the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at

9  697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in

10  prejudice must necessarily fail.  However, there are certain instances which are legally presumed to

11  result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of

12  counsel or where the State has interfered with counsel's assistance. Strickland, 466 U.S. at 692;

13  United States v. Cronic, 466 U.S. 648, 659 & n.25 (1984).  Ineffective assistance of counsel claims

14  are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000).

15  Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

16  1.  Conflict of interest

17  The state court's determination as to this issue was not unreasonable.  As stated above,

18  Petitioner has not shown that his representatives had any conflict of interest or that any such conflict

19  adversely affected their performance.

20  2.  Failure to cross-examine witnesses and challenge testimony of Belinda Anderson

21  Petitioner argues that counsel was deficient in failing to challenge the testimony of Belinda

22  Anderson at the February 19, 1999 preliminary hearing.  Petitioner claims that her testimony was

23  irrelevant and inadmissible because it related to misconduct occurring in 1998, while the only crimes

24  at issue in the hearing allegedly took place during May and June of 1997.  (See Lodged Doc. 1, CT at

25  52, 56.)

26  At the hearing, District Attorney Investigator Ralph Edwards testified to the conversations he

27  had with the victim concerning her sexual contact with Petitioner in May to November of 1997.

(Lodged Doc. 2, RT of February 9, 1999 at 1-3.)  Deputy Sheriff Belinda Anderson then testified to the conversations she had with the victim regarding her sexual relationship with Petitioner, although the time frame of the sexual contact was not specified.  (Id. at 4-6.)  Prior testimony given by Ms. Anderson suggests that she was referring to sexual contact between Petitioner and the victim that occurred beginning in September 1998.  (Lodged Doc. 1, CT at 18-24.)  Petitioner's counsel did not cross-examine either witness and, based on their testimony, the court found reasonable cause to believe Petitioner had committed the crimes that allegedly occurred in 1997.  (Lodged Doc. 2, RT of February 9, 1999 at 4, 7.)

Petitioner has not shown the requisite prejudice resulting from counsel's failure to challenge Ms. Anderson's testimony, as the statements of Investigator Edwards were sufficient to find reasonable cause to believe Petitioner committed the crimes in 1997 for which he was charged. Petitioner has not identified other specific deficiencies in counsel's performance relating to his generalized claim that counsel failed to properly cross-examine adverse witnesses.

3.  Failure to oppose joinder

Petitioner argues that his counsel was ineffective in failing to oppose the joinder of the two cases filed against him.  Counsel, however, did submit an opposition to the motion for consolidation prior to the trial court's ruling on the matter.  (Lodged Doc. 1, CT at 42-48; Lodged Doc. 2, RT of February 9, 1999 at 7-11.)  Petitioner has therefore not shown deficient performance or prejudice.

**D.  Ground Four**

Petitioner argues that his counsel was ineffective in 1) failing to properly investigate Petitioner's ability to give a knowing and intelligent statement due to drug use; 2) failing to secure the testimony of witnesses identified by Petitioner; 3) failing to obtain various transcripts and records; and 4) failing to properly investigate the victim's history of prostitution and false allegations of sexual abuse.

These claims were presented in a petition for writ of habeas corpus to the California Supreme Court, which summarily denied the petition.  (Lodged Doc. 6.)  When the state court reaches a decision on the merits but provides no reasoning to support its conclusion, we independently review

1    the record to determine whether the state court clearly erred in its application of Supreme Court law.

2    Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  However, although we independently review

3    the record, we still defer to the state court's ultimate decision.  Id.

4           As stated above, Petitioner must show deficient performance by counsel and prejudice.

5    Strickland v. Washington, 466 U.S. 668, 687, 691-92 (1984).

6           The state court did not clearly err in its application of Supreme Court law.  On January 5,

7    2000, the trial court conducted a *Marsden* hearing to consider Petitioner's claims that his counsel

8    was ineffective.  During the hearing, counsel explained that he had investigated Petitioner's claim

9    that he was unable to give a knowing and intelligent statement because he was under the influence of

10   drugs and that, based on the investigation, he concluded that the claim was not viable.  (Lodged Doc.

11   2, RT of January 5, 2000 at 7.)  Counsel also explained that he had employed an investigator to

12   locate the witnesses identified by Petitioner and that the witnesses had either been interviewed or the

13   investigator was unable to locate them.  (Id. at 8-10.)  Further, in later proceedings, counsel

14   explained that he was unable to call various witnesses to testify regarding the victim's history, as the

15   trial court ruled that such evidence was inadmissible.  (Lodged Doc. 2, RT of January 10-12, 2000 at

16   1-3, 143-44; Lodged Doc. 2, RT of January 10-12, 2000 [*Marsden* hearing] at 138-42.)

17

18          Petitioner has not shown that counsel was deficient in investigating potential witnesses, the

19   victim's history, or whether Petitioner was unable to give a knowing and intelligent statement, as the

20   transcripts show that counsel conducted a reasonable investigation into those issues.  See Hendricks

21   v. Calderon, 70 F.3d 1032, 1040 (9th Cir. 1995) ("[T]he duty to investigate and prepare a defense is

22   not limitless: it does not necessarily require that every conceivable witness be interviewed.").

23   Petitioner has not shown prejudice resulting from counsel's failure to call witnesses or obtain the

24   various transcripts and records, as Petitioner does not identify what facts would have been disclosed

25   by the witnesses and records and how those facts would have affected the outcome in his case.  See

26   Tinsley v. Borg, 895 F.2d 520, 532 (9th Cir. 1990) (rejecting ineffective assistance claim based on

27   failure to call a witness because his expected testimony was not sufficient to create a reasonable

28   probability of a different result).

1

**E.  Ground Five**

2

3        Petitioner argues that his rights were violated when the trial court conducted proceedings

4    outside of his presence.  Petitioner further argues that his right to compulsory process was violated

     when the trial court refused to permit him to call certain witnesses.

5

6        These claims were presented in a petition for writ of habeas corpus to the California Supreme

7    Court, which summarily denied the petition.  (Lodged Doc. 6.)  When the state court reaches a

8    decision on the merits but provides no reasoning to support its conclusion, we independently review

     the record to determine whether the state court clearly erred in its application of Supreme Court law.

9    Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  However, although we independently review

10   the record, we still defer to the state court's ultimate decision.  Id.

11       1.  Hearings outside of Petitioner's presence

12

13       Due process requires that a defendant be allowed to be present at any stage of the criminal

14   proceeding "to the extent that a fair and just hearing would be thwarted by his absence."  Kentucky

15   v. Stincer, 482 U.S. 730, 745 (1987).  However, "[t]he presence of a defendant must bear a

16   reasonably substantial relationship to the opportunity to defend.  The Constitution does not assure the

17   privilege of presence when presence would be useless, or the benefit but a shadow."  Stein v. U.S.,

18   313 F.2d 518, 522 (9th Cir. 1962) (quotation marks omitted).

19       The state court did not clearly err in its application of Supreme Court law.  Petitioner claims

20   that he suffered prejudice because he was not present during a hearing in which the court transferred

21   his upcoming *Marsden* hearing to a different department and during a second hearing in which the

22   trial court transferred his jury trial to another department.  (Petition at 16-18; Ex. F at 2.)  Petitioner

23   has not shown, however, that his absence from the hearings prevented a fair and just hearing on the

24   transfer issues or that the transfers themselves impaired his ability to set forth a defense.

25       2.  Compulsory process

26

27       The Sixth Amendment guarantees the right of an accused to have compulsory process for

28   obtaining witnesses in his favor.  The right, however, which includes the opportunity to offer the

     testimony of witnesses and to compel their attendance if necessary, is not without limitation.

1   Washington v. Texas, 388 U.S. 14, 18-19 (1967); Rock v. Arkansas, 483 U.S. 44, 55-56 (1987).  A

2   state court may violate a defendant's right to present a defense and witnesses by applying evidentiary

3   standards in an arbitrary or uneven way, such as applying the standard in a way that favors the

4   prosecution over defendants.  Gray v. Klauser, 282 F.3d 633, 645-46 (9th Cir. 2002), *vacated on*

5   *other grounds*,  Klauser v. Gray, 537 U.S. 1041 (2002).

6        The state court did not clearly err in its application of Supreme Court law.  Petitioner

7   contends that the trial court wrongfully excluded the testimony of Vicky Smothersome and Fransetta

8   Owens, which would have impeached the victim by showing she committed acts of "moral turpitude

9   and related acts." (Petition at 19.)  The trial court excluded the witnesses' testimony, however,

10  because it found that the victim's history was of little probative value on the central issue of whether

11  Petitioner engaged in intercourse with the victim and that the introduction of the evidence would

12  cause undue delay and confusion of the issues.  (See Lodged Doc. 2, RT of January 10-12, 2000 at 1-

13  3, 143-44; Lodged Doc. 2, RT of January 10-12, 2000 [*Marsden* hearing] at 138-42.)  Petitioner has

14  not shown that the trial court's exclusion of the witnesses' testimony was arbitrary or that the court

15  applied any evidentiary standard in an uneven manner.

16       **F.  Ground Six**

17       Petitioner argues that his rights were violated when the prosecution withheld exculpatory

18  evidence despite several discovery requests by Petitioner seeking the information.  Petitioner also

19  argues that the prosecution failed to inform the court or the defense that Fransetta Owens, who

20  initially claimed to have discussed the victim's age with Petitioner, recanted her claim during trial.

21       These claims were presented in a petition for writ of habeas corpus to the California Supreme

22  Court, which summarily denied the petition. (Lodged Doc. 6.)  When the state court reaches a

23  decision on the merits but provides no reasoning to support its conclusion, we independently review

24  the record to determine whether the state court clearly erred in its application of Supreme Court law.

25  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  However, although we independently review

26  the record, we still defer to the state court's ultimate decision.  Id.

27       "[T]he suppression by the prosecution of evidence favorable to an accused upon request

28  violates due process where the evidence is material either to guilt or to punishment, irrespective of

1  the good faith or bad faith of the prosecution."  Brady v. Maryland, 373 U.S. 83, 87 (1963).  "To

2  prevail on a *Brady* claim, '[t]he evidence at issue must be favorable to the accused, either because it

3  is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State,

4  either willfully or inadvertently; and prejudice must have ensued.'"  Hovey v. Ayers, 458 F.3d 892,

5  916 (9th Cir. 2006).

6       The state court did not clearly err in its application of Supreme Court law.  Petitioner has not

7  identified the specific nature of the information allegedly withheld by the prosecution or shown that

8  it is favorable to him and that its suppression undermined the verdict.  Further, Petitioner presents no

9  evidence establishing that Fransetta Owens recanted her statement regarding the discussion she had

10  with Petitioner about the victim's age or that Ms. Owens was "told to go home by the prosecution."

11  See Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995) (rejecting claim based on conclusory

12  allegations that prosecution failed to turn over exculpatory evidence).

13       **G.  Ground Seven**

14       Petitioner argues that he received ineffective assistance from his appellate counsel because

15  she failed to raise the issues presented in this petition on appeal.

16       This claim was presented in a petition for writ of habeas corpus to the California Supreme

17  Court, which summarily denied the petition.  (Lodged Doc. 6.)  When the state court reaches a

18  decision on the merits but provides no reasoning to support its conclusion, we independently review

19  the record to determine whether the state court clearly erred in its application of Supreme Court law.

20  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  However, although we independently review

21  the record, we still defer to the state court's ultimate decision.  Id.

22       Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the

23  Fourteenth Amendment.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective

24  assistance of appellate counsel are reviewed according to the two-prong test set forth in *Strickland*.

25  See, e.g., Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d

26  846, 847 (9th Cir. 1986).  Therefore, as above, a defendant must show that appellate counsel's advice

27  fell below an objective standard of reasonableness and that there is a reasonable probability that, but

28  for counsel's unprofessional errors, defendant would have prevailed on appeal.  Miller, 882 F.2d at

1434 & n.9, 694; <u>Birtle</u>, 792 F.2d at 849.  However, appellate counsel does not have a constitutional

duty to raise every nonfrivolous issue requested by defendant.  <u>Jones v. Barnes,</u> 463 U.S. 745,

751-54 (1983); <u>Miller</u>, 882 F.2d at 1434 n.10.  The weeding out of weaker issues is widely

recognized as one of the hallmarks of effective appellate advocacy.  <u>Miller,</u> 882 F.2d at 1434.  As a

result, appellate counsel will frequently remain above an objective standard of competence and have

caused his client no prejudice for the same reason - because he declined to raise a weak issue.  <u>Id.</u>

The state court did not clearly err in its application of Supreme Court law.  Appellate counsel

raised the following two issues on appeal: 1) insufficient evidence to support the jury's finding that

Petitioner's 1990 conviction for assault constituted a strike; and 2) the trial court erred in staying,

rather than striking, the five one-year enhancements under Penal Code section 667.5.  (Lodged Doc.

8.)  Petitioner has not shown that appellate counsel's performance was deficient, as Petitioner

prevailed on both claims.  (Lodged Doc. 3.)  Counsel was not required to raise every non-frivolous

claim.  Further, Petitioner has not shown prejudice resulting from counsel's decision to not raise the

instant claims on appeal, as each lacks merit for the reasons discussed herein.

**H.  Ground Eight**

Petitioner argues that his rights to due process and allocution were violated when the trial

court denied his request to speak prior to sentencing.  Petitioner claims that he wanted to address the

court regarding inaccuracies in his probation report, including statements of guilt that he never made.

Petitioner argues that he suffered prejudice because the court sentenced him to two life terms based

in part on the inaccuracies in the report.

This claim was presented in an appeal to the California Court of Appeal, which affirmed

Petitioner's sentence in a reasoned opinion on April 24, 2003.  (Lodged Doc. 4.)  The issue was then

raised in a petition for review to the California Supreme Court, which summarily denied review.

(Lodged Doc. 5)  The California Supreme Court, by its "silent order" denying the petition, is

presumed to have denied the claims presented for the same reasons stated in the opinion of the lower

court.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claims, the Court of Appeal found that, regardless of whether a

1  defendant has the right to personally address the court prior to sentencing, any error in preventing

2  Petitioner from doing so was harmless as Petitioner failed to make a factual showing of prejudice.

3  (Lodged Doc. 4.)

4         The Supreme Court has held that "[t]he failure of a trial court to ask a defendant represented

5  by an attorney whether he has anything to say before sentence is imposed is not of itself an error of

6  the character or magnitude cognizable under a writ of habeas corpus.  It is an error which is neither

7  jurisdictional nor constitutional." Hill v. U.S., 368 U.S. 424, 428 (1962).  The Court, however, has

8  not directly addressed the question of whether constitutional error occurs where a defendant's

9  request to speak is affirmatively denied. See id. at 429 ("It is to be noted that we are not dealing here

10  with a case where the defendant was affirmatively denied an opportunity to speak during the hearing

11  at which his sentence was imposed.  Nor is it suggested that in imposing the sentence the District

12  Judge was either misinformed or uninformed as to any relevant circumstances."); McGautha v.

13  California, 402 U.S. 183, 218-19 & n.22 (1971) (recognizing that the *Hill* Court reserved the issue of

14  whether silencing a defendant who wished to speak would rise to the level of a constitutional

15  violation).  The Ninth Circuit Court of Appeals, in contrast, while recognizing that the Supreme

16  Court has not addressed the issue, has held that a defendant's due process rights are violated when a

17  trial court denies a defendant's request to speak before sentencing. Boardman v. Estelle, 957 F.2d

18  1523, 1527, 1530 (9th Cir. 1992).

19         "To grant relief where a state court has determined that a constitutional error was harmless,

20  we must both determine (1) that the state court's decision was 'contrary to' or an 'unreasonable

21  application' of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice

22  under *Brecht* from the constitutional error." Inthavong v. Lamarque, 420 F.3d 1055, 1059 (9th Cir.

23  2005).  "Since both the *Brecht* and the AEDPA/*Esparza* tests must be satisfied with respect to

24  harmless error before relief can be granted, we are not obliged to address them in any particular

25  order." Id. at 1061.

26         Petitioner has not shown that the denial of his request to speak prior to sentencing had a

27  "substantial and injurious effect or influence" on his sentence. See Brecht v. Abrahamson, 507 U.S.

28  619, 631, 638 (1993).  Petitioner claims that the probation report used at his sentencing "was

1    inaccurate and [was a] misinterpretation of the facts."  He has not, however, identified any specific

2    inaccuracies or misinterpretations in the report that were likely to affect the trial court's sentencing

3    decision.

4                                        **RECOMMENDATION**

5           Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

6    DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for

7    Respondent.

8           This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill,

9    United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule

10   72-304 of the Local Rules of Practice for the United States District Court, Eastern District of

11   California.  Within thirty (30) days after being served with a copy, any party may file written

12   objections with the court and serve a copy on all parties.  Such a document should be captioned

13   "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall

14   be served and filed within ten (10) court days (plus three days if served by mail) after service of the

15   objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

16   636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may

17   waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18

19   IT IS SO ORDERED.

20   **Dated:      July 30, 2008                          /s/ John M. Dixon**

21   _____
                                    UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28